UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Camerin Harrington,　　　　　　　　　　　　　　　　Case No. 3:24-cv-1223

        Plaintiff,

  v.　　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　　　　　AND ORDER

Stearns Companies LLC, *et al.*,

        Defendants.

## I.　Introduction

Before me is the parties' "Joint Motion for Approval of FLSA Settlement" in this single-plaintiff, non-collective-action case. (Doc No. 22). For the reasons that follow, I grant the parties' motion in part and deny it in part.

## II.　Background

Defendants Stearns Companies LLC, EDS Enterprises LLC, and Erik Stearns own and operate several automotive-related businesses in northwest Ohio, including a salvage yard called "Dick's Auto Salvage." (Doc. No. 1 at 3). Defendants initially hired Plaintiff Camerin Harrington on June 30, 2021, as a tow truck driver, though he later drove tractor trailers as well. (*Id.*). When Defendants hired Harrington, they offered him a $5,000 signing bonus. (*Id.*). Harrington has ADHD, chronic depressive disorder, and bipolar II disorder, and those conditions cause him to frequently suffer debilitating migraine headaches. (*Id.* at 4).

During Harrington's period of employment, Defendants acquired a totaled 2014 Ford Taurus that could not become operable again without considerable repair effort. (*Id.*). Erik Stearns offered to sell the Taurus to Harrington at a discount if Harrington made the necessary repairs. (*Id.*).

After Harrington did so, Stearns named a price: between $4,000 and $5,000. (*Id.*) Realizing this was roughly equivalent to his promised signing bonus, Harrington proposed that he receive the repaired Ford Taurus in lieu of his signing bonus. (*Id.*). Stearns allegedly agreed and signed the title of the car over to Harrington. (*Id.*).

Several months later, on February 14, 2022, Harrington began suffering a series of migraines which rendered him unable to work for several days. (*Id.* at 5). On February 18, 2022, Defendants fired him for his absences during the preceding workweek. (*Id.*). His final paycheck, for $1,790.88, included 40 "straight time" hours at a rate of $24 per hour and 23.08 overtime hours at a rate of $36 per hour. (*Id.*). This paycheck also reflected that his year-to-date gross earnings were $9,747.88. (*Id.*).

Defendants ordinarily paid Harrington via direct deposit during his tenure. (*Id.*). But Defendants did not pay his final paycheck via direct deposit. Instead, Harrington alleges, Erik Stearns notified Harrington that he would receive these wages via a paper check—but only if Harrington returned the Ford Taurus. (*Id.*). Stearns also allegedly tried to prevent Harrington from recovering Harrington's personal toolbox unless he returned the Taurus. (*Id.*).

In 2023, Stearns Co. and EDS Enterprises allegedly issued an IRS form W-2 to Harrington and to the IRS reflecting total paid wages of $9,747.88 for 2022. (*Id.* at 6). But Harrington alleges this W-2 was false, because, at that time, he had in fact received only $7,957.00 in wages. (*Id.*). The unpaid final paycheck of $1,790.88 accounted for the difference. (*Id.*).

Harrington sued Defendants on March 4, 2024. (*See id.*). He brings the following causes of action: (1) willful violation of the FLSA against all defendants, (2) willful filing of a false tax return under 26 U.S.C. § 7434 against the corporate defendants, (3) violation of the Ohio Prompt Pay Act against the corporate defendants, (4) breach of implied contract against the corporate defendants, (5)

promissory estoppel against the corporate defendants, and (6) unjust enrichment and quantum meruit against the corporate defendants. (*See id.* at 6-11).

In their answer, Defendants admitted to some of the facts alleged in the Complaint. They admitted that Harrington was eligible for a $5,000 signing bonus and that Stearns offered to sell Harrington the Taurus. (*See* Doc. No. 17 at 3, 5). They admitted that Harrington was hired at a rate of $24 per hour, with a rate of $36 per hour for all hours worked over 40 in a given workweek. (*Id.* at 9). They admitted Harrington worked 63.08 hours the week of February 5, 2022. (*Id.* at 10). Finally, they admitted that Harrington's final paycheck was not transmitted to him via direct deposit, and that Harrington did not pick up his final paycheck in person. (*See id.* at 5).

On January 16, 2025, the parties filed a "Joint Motion for Approval of FLSA Settlement." (Doc. No. 22). They attached a copy of the proposed settlement agreement, which would resolve all claims in this case against all parties. (*See* Doc. No. 22-1). The proposed settlement is unsigned. (*Id.*). If approved, the settlement would require Defendants to pay $10,000: $5,595.00 to Harrington for "back pay and liquidated and statutory damages . . . plus additional sums for his tax reporting claim," and $4,405.00 for "reasonable attorneys' fees and costs." (Doc. No. 22 at 2). Defendants would also release Harrington from any liability for claims related to his period of employment, including those related to the alleged sale or transfer of the motor vehicle to Harrington. (*See* Doc. No. 22-1 at 3).

In return, Harrington would release Erik Stearns, both corporate defendants and their successors and subsidiaries (including Dick's Auto Salvage, LLC), and all of the corporate defendants' past and present shareholders, employees, and agents, from all claims arising from or related to the facts alleged in the Complaint. (*See id.* at 2-3). This includes causes of action not alleged in the complaint, such as a violation of the Americans with Disabilities Act. (*Id.* at 3). Harrington also agrees that he will not work for the Defendants in the future, and that the

3

settlement amount constitutes all outstanding wages he is owed for his period of employment. (*See id.*).

### III. ANALYSIS

An agreement to settle an FLSA claim generally requires court approval. *See, e.g.*, *Brim v. Assurant, Inc.*, Case No. 3:21-cv-221, 2022 WL 2121163, at *1 (S.D. Ohio May 9, 2022). Courts in the Sixth Circuit routinely evaluate the suitability of FLSA settlements "even when such settlements involve individual (as opposed to collective) claims." *Chime v. Fam. Life Counseling and Psychiatric Servs.*, Case No. 1:19-cv-2513, 2020 WL 6746511, at *3 (N.D. Ohio Nov. 17, 2020) (collecting cases).

Courts scrutinize a proposed FLSA settlement to ensure the agreement is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States ex rel. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982).[1] A court must also "allow a reasonable attorney's fee . . . and costs" to be paid by the defendant. 29 U.S.C. § 216(b). In a single-plaintiff case like this one with no proposed collective under the FLSA, "the following factors apply to determine whether the settlement is fair and reasonable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; and (5) the public's interest in the settlement." *Fisher v. Samson Tube, LLC*, Case No. 3:20-cv-351, 2021 WL 4952848, at *1 (S.D. Ohio June 7, 2021) (internal citations omitted).

---

[1] While a settlement of claims under the FLSA is subject to court approval, parties who have reached a settlement may ordinarily dismiss an action without a court order just by filing a stipulation of dismissal signed by all parties who have appeared in the case. *See* Fed. R. Civ. P. 41(1)(A)(ii); *see also Doe v. Hogan*, 421 F. Supp. 2d 1051, 1056 n.6 (S.D. Ohio 2006) (explaining that "private settlements" usually do not receive court approval). The parties have not asked for my approval of the settlement as it pertains to Harrington's non-FLSA claims, and I see no reason for my evaluation of the parties' settlement to encompass non-FLSA claims. (*See* Doc. No. 22). Therefore, I analyze the settlement only to ensure it is a "fair and reasonable resolution of a bona fide dispute" regarding Harrington's FLSA claim. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355.

The district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright v. Premier Courier, Inc.*, Case No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)). But "[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quotation omitted).

Evaluating the likelihood of success on the merits begins with the elements of the claim. Two FLSA requirements form the basis of Harrington's FLSA cause of action. (*See* Doc. No. 1 at 6). First, if an employee works for more than 40 hours in a given workweek, he must be compensated "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Second, an employer must pay an employee a minimum wage for all work performed in a given workweek. *See* 29 U.S.C. § 206(a)(1). An employee who is not paid legally required minimum or overtime wages is entitled to damages "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). In addition, the FLSA contains a 3-year statute of limitations for willful violations and a 2-year statute of limitations for all other violations. 29 U.S.C. § 255(a); *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).

The parties would face some risk regarding the applicable statute of limitations and the accrual of Harrington's FLSA claim if they continued to litigate this case. Harrington filed this lawsuit on March 4, 2024. (*See* Doc. No. 1). A two-year lookback from that date is March 4, 2022, and a three-year lookback from that date is March 4, 2021. The parties agree Harrington was terminated on February 18, 2022. (*See* Doc. No. 1 at 5; Doc. No. 17 at 4). Harrington alleges he "should have received his Final Paycheck via direct deposit" on February 18, 2022. (*See* Doc. No. 1

5

at 5). This date is outside of the two-year limitations period but within the three-year limitations period. Harrington risks his FLSA claim falling outside of the applicable statute of limitations if the applicable limitations period is two years and his claim accrued on or before February 18, 2022. Defendants risk liability for the full amount of statutory damages under the FLSA if the limitations period is three years or if Harrington's claim accrued on or after March 4, 2022.

In light of this uncertainty, the settlement amount is a fair resolution of Harrington's FLSA claim. First, the parties agree on the amount of Harrington's final paycheck and the breakdown of the hours he worked during his final pay period. Harrington made $24 per hour as his base rate, with a time-and-a-half rate of $36 per hour for all hours worked over 40 in a given week. (*See* Doc. No. 1 at 5; Doc. No. 17 at 9, 10). He worked 63.08 hours his final week of work, which translates to 40 hours at the $24 per hour rate ($960) and 23.08 hours at the $36 per hour rate ($830.88), for a total of $1,790.88. (*See id.*).

Further, Defendants agree that Harrington's final paycheck was not transmitted to him via direct deposit and that Harrington did not pick up the final paper paycheck. (*See* Doc. No. 17 at 5). Therefore, the parties agree Harrington earned wages of $1,790.88 for his last week of work, an amount which includes both his alleged "unpaid minimum wages" and his "unpaid overtime compensation" under the FLSA. *See* 29 U.S.C. § 216(b).

The settlement's proposed payment to Harrington of $5,595 includes the entire amount of Harrington's final paycheck, plus an additional amount equal to that paycheck, plus $2,013.24 on top of that. *See id.* (entitling a successful FLSA plaintiff to "an additional equal amount" of liquidated damages); (Doc. No. 22 at 2). A recovery of 100% of alleged FLSA statutory damages strongly suggests the settlement is a fair resolution of a disputed FLSA claim. *Cf., e.g.*, *Pierce v. Diversified Health Mgmt., Inc.*, Case No. 2:21-cv-02624, 2021 WL 4401437, at *2 (S.D. Ohio Sept. 27, 2021) (approving a settlement with a "substantial recovery of 100% of her alleged overtime payments and

75% of her alleged liquidated damages"). Because Harrington's recovery for his FLSA claim is substantial, and because both parties face legal and factual risk if they continue to litigate this case, "[t]he tradeoff embodied in the settlement is fair." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016).

The other factors support the approval of this settlement, too. "Courts presume the absence of fraud or collusion unless there is evidence to the contrary," and there is no evidence of such misconduct here. *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006). The parties have come to a resolution of this case relatively early, prior to substantial discovery or motion practice. Given the Defendants' factual admissions in their Answer related to Harrington's wages, and the parties' representations regarding discovery in their joint motion, I am satisfied the parties have been appropriately diligent in their investigation of this case. (*See* Doc. No. 17 at 3, 5, 9, 10; Doc. No. 22 at 1-2); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) ("[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties.").

Further, while this case is not especially complex because it involves only one plaintiff and relatively few uncontested factual issues, settling the case at this stage minimizes the parties' unnecessary expenditure of time and money moving forward. *See, e.g.*, *Ganci v. MBF Inspection Servs., Inc.*, Case No. 2:15-cv-2959, 2019 WL 6485159, at *4 (S.D. Ohio Dec. 3, 2019). Finally, the public interest supports the approval of this settlement. By fully compensating Harrington for his earned wages and his statutory damages under the FLSA, the settlement "implicitly serves" the public policies underlying the FLSA: ensuring adequate compensation for overtime work and eliminating the "'evils and dangers resulting from'" the underpayment of workers. *Athan v. United States Steel Corp.*, 523 F. Supp. 3d 960, 968 (E.D. Mich. 2021) (quoting *United States v. Rosenwasser*, 323 U.S. 360,

361 (1945)) (additional citation in *Rosenwasser* omitted). After considering the factors above, I conclude the parties have a *bona fide* dispute regarding Harrington's FLSA claim and that the settlement is a fair and reasonable resolution of that dispute.

The parties' proposed settlement would also provide Harrington's counsel with $4,405.00 for "reasonable attorneys' fees and costs." (Doc. No. 22 at 2). But the parties provide no accounting for this figure. As a result, it is not clear which portion of the sum corresponds to attorneys' fees and which portion corresponds to court costs. The parties also do not provide any documentation of the time Harrington's counsel spent litigating this case. Absent any information indicating "how that sum was calculated," I cannot determine the "reasonableness" of the proposed $4,405.00 attorneys fee in the settlement agreement. *Brim*, 2022 WL 2121163, at *3.

Accordingly, I approve the settlement as to the amount to be paid to Harrington. But I defer approval of the fees-and-costs amount until the parties have submitted: (1) documentation separately breaking out fees and costs, and (2) documentation of the time spent on this case by Harrington's counsel, including rates and hours worked. *See id.* (approving a payment to the plaintiff but deferring approval of the attorneys' fee payment until the parties provided further documentation). The parties may file these documents on the docket under seal, and they must file them within 14 days after the issuance of this Memorandum Opinion and Order.

### IV. Conclusion

For the reasons above, the Parties' Joint Motion for Approval of FLSA Settlement is granted in part and denied in part. (Doc. No. 22).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
